UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
NORTHERN DIVISION

| ASSOCIATED ELECTRIC COOPERATIVE, INC., | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 2:12CV00016 ERW |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL NO. 53, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court upon Defendant International Brotherhood of Electrical Workers, Local No. 53 ("Defendant") and Plaintiff Associated Electric Cooperative, Inc.'s ("Plaintiff") cross motions for summary judgment [ECF Nos. 19, 21].

**I.   BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff fired employee Leo Johnson ("Grievant") on June 16, 2011, following a positive drug test. Grievant previously had signed a Last Chance Agreement ("LCA") following a drug test in which Grievant had not tested positive, but nonetheless had admitted to prior drug use. The LCA stated that any future positive drug test would result in termination. Grievant's termination was based upon his violation of the LCA [ECF No. 1 at *3, ¶15].

Defendant, Grievant's union, filed its grievance on June 20, 2011, and an arbitration hearing was held December 6, 2011. On January 23, 2012, the arbitrator found the LCA unconscionable and reinstated Grievant with back pay [ECF No. 1-1 at *13-14].

Plaintiff filed this action March 9, 2012, seeking to have the arbitration decision vacated [ECF No. 1]. The parties filed cross motions for summary judgment on August 17, 2012 [ECF

Nos. 19, 21], and filed their responses September 7, 2012 [ECF Nos. 23, 24]. Replies were filed September 14, 2012 [ECF Nos. 25, 26].

## II. DISCUSSION

### A. LEGAL STANDARD

Plaintiff asks this Court to vacate the arbitrator's decision because he: "disregarded, ignored, and refused to follow the clear terms and provisions of the [LCA]"; subjectively reviewed the determination of a positive drug test; reached a conclusion contrary to the evidence; and "instilled his own personal standards of industrial justice." [ECF No. 1 at *3, ¶23].

Federal labor law encourages the private resolution of labor disputes. *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 596 (1960); *Coca-Cola Bottling Co. v. Teamsters Local 688*, 959 F.2d 1438, 1440 (8th Cir. 1991). Ordinarily, courts are obligated to defer to an arbitrator's conclusion, even where it believes serious error was committed, so long as it appears the arbitrator "even arguably constru[ed] or appl[ied] the contract and act[ed] within the scope of his authority." *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987). This Court does not review possible factual or legal errors committed by the arbitrator, as such errors would be insufficient to overturn an arbitrator's judgment. *New Pasta Co. v. Int'l Broth. of Teamsters, Local Union No. 688*, 2007 WL 3232226 at *4; *Misco*, 484 U.S. at 38. However, an arbitrator is not entitled to ignore the plain language of contracts, and may not "dispense his own brand of industrial justice." *Enterprise Wheel*, 363 U.S. at 597; *United Paperworkers Int'l*, 484 U.S. at 38; *Coca-Cola Bottling Co.*, 959 F.2d at 1440.

A last chance agreement is a "contract between employer and employee to suspend disciplinary action pending a probationary period in which the employee is afforded a chance to improve his or her performance." *Coca-Cola Bottling Co.*, 959 F.2d at 1440 (quoting *United*

2

*States Dep't of the Air Force v. Fed. Labor Relations Auth.*, 949 F.2d 475, 477 (D.C.Cir. 1991)). Where an employee violates the agreement, the employer is entitled to proceed to enforce the previously-suspended discipline. *Id.*

    **B.    ANALYSIS**

The issue for the arbitrator was whether the employer was justified in discharging Grievant for violating the terms of a last chance agreement [ECF No. 1-1 at 2]. Here, the arbitrator found the LCA to be void and unenforceable. He then analyzed whether under the collective bargaining agreement, Plaintiff was justified in terminating Mr. Johnson.

The Court will first note several of the arbitrator's points concerning his conclusion that the LCA is void and unenforceable, because the arbitrator's factual findings are inconsistent with his final conclusions. The arbitrator found that Mr. Johnson, an employee of Plaintiff for more than twenty-eight years, was randomly selected on April 18, 2011, to provide a urine sample. Johnson was employed as a refrigeration mechanic and had a satisfactory job performance rating. Concerned that his urine sample might test positive for marijuana, prior to taking his drug test, Johnson confessed to the plant manager that he had smoked marijuana while on leave from work, approximately ten days prior to the test. At that time, Johnson was presented with the LCA, which was read aloud by the personnel manager. Johnson declined union representation and signed the LCA. Johnson was then instructed to attend an Employee Assistance Plan ("EAP") counseling session, and the plant manager arranged for Johnson to be driven home by a co-worker. Johnson was placed on unpaid leave while attending drug rehabilitation counseling, and was required to submit to additional drug tests at the EAP office. Johnson's April 18 test ultimately was negative for marijuana; however, his EAP drug tests were positive for traces of marijuana, as well as for a prescription benzodiazepine drug.

Section I of Plaintiff's drug policy provides that "[e]mployees taking prescription medication that is not prescribed for the employee by a physician may result in a positive test result." Paragraph I of the LCA has employees agree that "I understand and agree that if I report to work under the influence, test positive, or I am in the possession of alcohol, drugs or controlled substances on company property, my employment with AECI will be terminated."

The personnel manager told Johnson on June 3, 2011, that the testing laboratory had cleared him for work, and that he was released by EAP. However, that same day he was contacted and told he could not return to work because an EAP drug test had returned positive for a type of benzodiazepine drug (Valium) not prescribed to Johnson. On June 13, 2011, the plant manager called Johnson, advising him he was terminated for violating the LCA.

In his decision, the arbitrator recognized that the employer generally receives the benefit of the doubt in close cases where reasonable minds can differ. This is because, he found, work rules are needed in order to ensure efficient plant operations, where illicit drug and alcohol use contributes to absenteeism, accidents, and injury; the employer has a right, indeed a responsibility, to enforce a zero tolerance drug policy. The arbitrator also noted that a company must have its workforce reporting for work free of drugs and drug residue. The arbitrator also recognized that by signing an LCA, the employee promises, in lieu of termination, that he will correct their behavior in exchange for clemency. The arbitrator observed that the employee waives the labor contract's just cause requirement for termination as part of the LCA, and that if the employee fails to conform his conduct to the LCA, he will be terminated.

The arbitrator cited to several cases illustrating the importance of union representation where an employer is attempting to obtain an LCA; as the arbitrator noted, representation was offered to Johnson, who declined. The arbitrator concluded that the lack of representation was

4

not an issue.  The arbitrator also recognized that sanctity of contract applies with equal force to an LCA as to any other general commercial contract.

The arbitrator concluded that "good judgment" must balance an employee's rights with a company's drug policy, and that the company is not entitled to free reign to ignore fundamental due process.  The arbitrator found that Plaintiff, in this case, did not grant due process, notwithstanding his foundational conclusion that the LCA, as a contractual device, "is intended to operate as a substitute for certain portions of the collective bargaining agreement" and "as commonly used it eliminates the just cause/due process provisions."

Contrary to the undisputed clear terms of the LCA and noting the provision that the LCA "as commonly used [] eliminates the just cause/due process provisions," the arbitrator concluded that the LCA, as applied to Johnson, was unconscionable, stating that Johnson had broken no company rules at the time he signed the LCA, that he had not smoked marijuana on company property, that he did not act impaired at work, and that he ultimately passed the initial random drug test.  The arbitrator further noted that Johnson was not a problem employee, that he had no history of disciplinary problems during his twenty-eight years of employment, and that he did not require close supervision.  Even though the arbitrator cited LCA conditions requiring compliance with established standards, demanding that job performance warrant close supervision upon return to work, that Johnson had agreed to such supervision, he even observed that the LCA also stated that after termination of the LCA, the employer was entitled to add to or sustain the LCA, and that "[f]ailure to adhere to any item eliminates all defenses on [Johnson's] part and will subject [him] to immediate termination."  Nevertheless, irrespective of all of these clear contract terms which are undisputed, the arbitrator found the LCA to be "clearly unconscionable," and concluded that the employer's delivering to Johnson "an entire full page of commandants [sic]"

5

was unjustified, given that Johnson had not violated any rules, although he found that Johnson had tested positive for a prescription drug for which he had no prescription, a clear violation of LCA. Based on these findings, the arbitrator declared the contract unenforceable.

The arbitrator concluded that an absence of meaningful choice for one party, together with contract terms unfavorable to the other party, can render a contract unenforceable. Once the arbitrator concluded that the LCA was a nullity, he deemed it necessary to consider whether Johnson's treatment violated the just cause provision of the collective bargaining agreement. He concluded that it did, due to the fact that Johnson was given no chance to explain before being terminated by phone, and that no investigation was performed. However, *Coca-Cola Bottling Co.* at 1440-41, explains that the collective bargaining agreement is irrelevant and should not be considered since the LCA "superseded the collective bargaining agreement." The LCA had no language granting Johnson an "opportunity to explain" before he was terminated and there was no legal requirement that the company perform an investigation, albeit, there is no dispute that the company completed investigatory testing procedures which resulted in terminable conduct by Johnson.

While this Court does not sit in judgment of the arbitrator's factual or legal conclusions, *see New Pasta Co.*, 2007 WL 3232226 at *4, nor does it pass judgment on the validity of the arbitrator's interpretation of the agreement, as noted in *Enterprise Wheel* at 597, "an arbitrator is confined to interpretation and application of the [LCA]; he does not sit to dispense his own brand of industrial justice . . . . [H]is award is legitimate only so long as it draws its essense from the [LCA]." The record reflects that Johnson freely confessed to taking prescription drugs for which he had no prescription, an act proscribed by the LCA. Johnson expressly declined union representation. There is no evidence that Johnson was pressured or forced to sign the LCA. The

employer is entitled to enforce a zero tolerance, drug free workplace, and the arbitrator cited to no authority supporting his conclusion that the employer was not entitled to rely on the terms of the LCA. Where the language of the [LCA] is clear, and unambiguous, and the parties agreed to it, they are bound by it. *Coca-Cola Bottling* Co., at 1442. In this case, the arbitrator ignored the clear and unambiguous terms of the LCA and imposed his personal standards of industrial justice. The cases cited by Plaintiff, *see New World Pasta Co.*, 2007 WL 3232226, establish that an arbitrator is not entitled to decline to apply an otherwise-enforceable LCA. *See, e.g.*, *Ohio Edison Co. v. Ohio Edison Joint Council*, 947 F.2d 786 (6th Cir. 1991); *Coca-Cola Bottling Co.*, 959 F.2d 1438.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment [ECF No. 21] is **GRANTED**. The January 23, 2012 arbitration award is **VACATED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Summary Judgment [ECF No. 19] is **DENIED**.

So Ordered this 24th day of October, 2012.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE